**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| BARBARA PADDACK,<br><br>Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 4:09-CV-25-TS |

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Remand to State Court [DE 11], filed on April 17, 2009. For the reasons stated in this Opinion and Order, the Plaintiff's Motion for Remand will be denied.

## BACKGROUND

On February 26, 2009, in Tippecanoe County Superior Court, Plaintiff Barbara Paddack filed her Complaint [DE 1] against Defendant Life Insurance Company of North America. She alleges that the Defendant failed to pay disability benefits under the terms of the Defendant's long-term disability insurance policy after she became disabled due to terminal stage III non-Hodgkin's lymphoma beginning in July 2007.

On March 25, 2009, the Defendant filed a Notice of Removal [DE 2], premising this Court's subject-matter jurisdiction on diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Notice states that the Plaintiff is a resident of Indiana and that the Defendant is incorporated and maintains its principal place of business in Pennsylvania, therefore making it a citizen of

Pennsylvania.[1] The Notice also states that the amount in controversy exceeds $75,000, exclusive of interest and costs.

On April 17, 2009, the Plaintiff filed her Motion for Remand. She argues that this Court lacks subject-matter jurisdiction because the Defendant has failed to establish that the amount in controversy at the time of removal exceeded $75,000, and that the Court should remand the case to the Tippecanoe County Superior Court. The Plaintiff further requests that this Court award her attorney's fees because the Defendant lacked foundation to remove this action to federal court. On May 11, the Defendant filed a Response [DE 17], and on June 2, the Plaintiff filed a Reply [DE 22].

## DISCUSSION

Federal courts "are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008). A defendant may remove a civil action from state court if the case is one over which a district court has original jurisdiction. 28 U.S.C. § 1441(a). The federal removal statute provides in relevant part that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Because the Defendant premises this Court's subject-matter jurisdiction upon diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court can hear this case only if there was complete diversity between the parties at the time the case

[1] The Complaint alleges that the Plaintiff is a citizen of Indiana.

was filed in the Tippecanoe County Superior Court and at the time of removal, and if the amount in controversy exceeded $75,000, exclusive of interest and costs. *See Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004).

As noted above, the Plaintiff selected a state court as the forum for her dispute with the Defendant, and the Defendant removed this case to federal court. As a consequence, the Defendant is the proponent of federal jurisdiction. Generally, the party seeking a federal forum has the burden of establishing that jurisdiction in federal court is appropriate, *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995), and thus the Defendant in this case bears the burden of demonstrating that removal is proper, *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004). In order to meet this burden, the Defendant must support its jurisdictional allegations with "competent proof" of the amount in controversy. *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006). Once the Defendant has established the amount in controversy by competent proof, the Plaintiff can defeat jurisdiction "only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006).

The standard applied to a removing defendant is more exacting than the standard applied to a plaintiff asserting diversity jurisdiction in the initial pleadings. *Van Swol v. ISG Burns Harbor, LLC*, 491 F. Supp. 2d 807, 810 (N.D. Ind. 2007) (citing *Pratt, Bradford & Tobin, P.C. v. Norfolk & W. Ry. Co.*, 885 F. Supp. 1126, 1130 (S.D. Ill. 1994)). Furthermore, district courts are to "interpret the removal statute narrowly," and doubts regarding jurisdiction should be resolved in favor of remand to state court. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Van Swol*, 491 F. Supp. 2d at 810–11 (citing *Bush v. Roadway Express, Inc.*, 152 F. Supp.

2d 1123, 1125 (S.D. Ind. 2001); *Tom's Quality Millwork, Inc. v. Delle Vedove USA, Inc.*, 10 F. Supp. 2d 1042, 1044 (E.D. Wis. 1998)).

In this case, there appears to be no issue regarding diversity of citizenship, but the amount in controversy is disputed. The Defendant's removal of this case to this Court was proper—and this Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332—only if the amount in controversy exceeds the sum of $75,000. The amount in controversy is determined "by an evaluation of the controversy described in the plaintiff's complaint and the record as a whole, as of the time the case was filed." *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002). The Seventh Circuit recently explained the standard courts should employ when the amount in controversy is at issue:

> "[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is legally certain that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed."

*LM Ins. Corp. v. Spaulding Enter. Inc.*, 533 F.3d 542, 547 (7th Cir. 2008) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

In its Notice of Removal, the Defendant claims that the amount in controversy is over $75,000 based upon the following estimates regarding damages the Plaintiff is thought to seek: unpaid disability benefits (between $8112-12,553); future benefits ($217,800); punitive damages ($50,000); and interest, emotional distress, financial, and other losses (over $13,000). (DE 2 at 2–4.) Although the Defendant in its Notice of Removal identifies future benefits as part of its calculation, the Defendant in its Response to the Plaintiff's Motion for Remand seems to have

abandoned this damages category. Because the Defendant has not developed this argument, the Court need not decide whether future benefits should be included in the amount in controversy. *See Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (holding that cursory or undeveloped arguments constitute a waiver). Additionally, although the Plaintiff stated in her Complaint that the amount in controversy does not exceed $75,000 (Compl. ¶ 11), this statement does not limit the amount in controversy or resolve the question whether removal was proper. *See Dubrin v. Wal-Mart Stores, Inc.*, No. 1:04-CV-1570, 2004 WL 2750256, at *2 (S.D. Ind. Oct. 27, 2004) (stating that, "if a plaintiff wants to avoid federal court, the plaintiff must file before removal a stipulation or affidavit indicating that it is not seeking and will not demand or accept any recovery in excess of $75,000, exclusive of costs and interest") (citing *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002); *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam)). The Court will now consider whether each of the other remaining categories of damages should properly be included in the amount in controversy.

The Plaintiff claims that the amount of her unpaid back disability benefits on the date the Defendant removed the case to this Court was $9016, and the Defendant, for the purposes of its Response to the Plaintiff's Motion, accepts as accurate the Plaintiff's calculation of unpaid benefits damages. Accordingly, the Court will included in the amount in controversy $9016 in unpaid disability benefits.

In determining whether punitive damages contribute to the amount in controversy, the Seventh Circuit has developed a two-step inquiry:

> [W]here punitive damages are relied upon to satisfy the amount in controversy requirement, the court must determine whether punitive damages are recoverable

> under state law. If punitive damages are available, subject matter jurisdiction exists unless it is legally certain that the plaintiff will be unable to recover the requisite jurisdictional amount.

*LM Ins. Corp.*, 533 F.3d at 551 (quotation marks and citations omitted).

Under Indiana law, a plaintiff is able to collect punitive damages in an insurance contract case if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness that is not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence or other human failing. *See McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 867–68 (7th Cir. 1994) (discussing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993)). Furthermore, in order to justify punitive damages, Indiana courts require true bad faith, as distinct from honest errors. *Armstrong Cleaners, Inc. v. Erie Ins. Exch.*, 364 F. Supp. 2d 797, 818 (S.D. Ind. 2005) (citing *Erie Ins. Co.*, 622 N.E.2d at 520; *Woodley v. Fields*, 819 N.E.2d 123, 133 (Ind. Ct. App. 2004)).

In her Complaint, the Plaintiff alleges that the Defendant violated the "covenant of good faith and fair dealing" by denying her benefits, failing to conduct a proper investigation, compelling her to initiate this litigation, and ignoring the statements of her physicians, (Compl. ¶ 17), and that the Defendant's actions were malicious, fraudulent, willful or with wanton disregard for probable injury, or with gross negligence or oppressiveness, (Compl. ¶ 18). Therefore, the Plaintiff claims the Defendant acted in bad faith, and, under Indiana law, punitive damages would be available should she make the requisite showing. Furthermore, there is no legal certainty that the Plaintiff will be unable to recover punitive damages, and, accordingly, her claim for punitive damages should be included in the amount in controversy.

A question remains, however, as to the precise amount of punitive damages to be

included in the amount in controversy. Consistent with Indiana law, the Plaintiff did not specify the amount of punitive damages that she is seeking in this case. *See* Ind. R. Trial P. 8(A)(2) (providing that, "in any complaint seeking damages for personal injury or death, or seeking punitive damages, no dollar amount or figure shall be included in the demand"). However, by statute, Indiana caps punitive damage awards at $50,000 or three times the amount of compensatory damages awarded, whichever is greater. Ind. Code § 34-51-3-4. Because a punitive damage award of $50,000 is greater than three times the $9016 amount the Plaintiff is seeking, the Court will include $50,000 in punitive damages in the amount in controversy.[2]

In her Complaint, the Plaintiff states that the Defendant's refusal to pay her disability benefits resulted in her suffering emotional distress, financial losses, and other losses, (Compl. ¶ 16), and her Complaint concludes with a prayer for relief that includes the unpaid disability benefits, interest, damages for the Defendant's bad faith refusal to pay, emotional distress, and punitive, (Compl. at 2). Thus, in addition to the unpaid disability benefits and punitive damages mentioned above, the Plaintiff seeks interest, damages for the Defendant's bad faith, emotional distress, financial losses, and other unspecified losses. The Complaint provides no indication of the amount she is seeking for such damages. In her Reply, the Plaintiff argues that "[t]he crux of this case is that [the Defendant] breached the disability policy" and that "[t]he amount owed [the Plaintiff] under her disability policy amounted to $9,016 at the time of removal." (Pl.'s Reply 3.)

---

[2] In support of her Motion for Remand, the Plaintiff argues that, even assuming punitive damages must be included in the amount in controversy, the maximum amount of punitive damages that should count toward the total amount in controversy is $12,500 because, under Indiana law, plaintiffs only receive 25 percent of punitive damages collected in a particular case. However, the Court is charged with determining the "amount in controversy," not the amount the Plaintiff will actually collect. Furthermore, the Plaintiff has cited no cases in support of this aspect of her argument. Accordingly, $50,000, rather than $12,500, is the appropriate amount of punitive damages to be included in the amount in controversy.

However, by alleging a tort claim for breach of the duty of good faith and fair dealing (a bad faith tort claim) and seeking damages for Defendant's bad faith refusal to pay her claim, emotional distress, financial losses, and other losses (in addition to unpaid disability benefits, interest, and punitive damages), the Plaintiff expanded the scope of this case beyond a simple breach of a disability policy case.

The Defendant's Notice of Removal estimates that the Plaintiff will seek in excess of $13,000 based upon the range of damages the Plaintiff requests in her bad faith tort claim, and its Response estimates that the Plaintiff will seek in excess of $16,000 for this cluster of damages.[3] The Defendant's Response also highlights that the Plaintiff has not stipulated or admitted that she would not seek damages in excess of the jurisdictional amount in this case. *See Oshana*, 472 F.3d at 512 (stating that the plaintiff "cannot benefit by playing a cat-and-mouse game, purporting to disclaim damages in excess of $75,000 but refusing to admit or stipulate that her damages will not exceed that amount"). In addition to the estimate of unpaid disability benefits based upon the Complaint and the punitive damage award permitted by Indiana law, the Defendant relies upon an affidavit of one of its attorneys, who has not appeared in this action. The affidavit references three previous cases against the Defendant, in which the Plaintiff's counsel represented various plaintiffs, and it states:

> 6. In each of these past cases filed by Plaintiff's counsel in this case, which were similar in nature and involved the same policy and employee benefits plan, Plaintiff's counsel demanded damages based on loss of other employee benefits (i.e. health and life insurance) as a result of the denial of disability benefits. Each of those cases involved demands well in excess of $75,000.00.

[3] The Defendant's $13,000 figure was based upon its estimate of the remaining amount necessary to exceed the $75,000 jurisdictional threshold, assuming $12,553 for unpaid disability benefits and $50,000 for punitive damages. Thus, the Defendant's $16,000 figure is based upon $9016 for unpaid disability benefits.

(DE 2-3 at 2.)

The Seventh Circuit has suggested a non-exhaustive list of methods by which defendants can show competent proof that the amount in controversy exceeds $75,000. *See Meridian Sec. Ins. Co.*, 441 F.3d at 541–42 (listing several permissible ways to establish the amount in controversy by competent proof, including: contentions interrogatories and admissions in state court; calculation from the complaint's allegations, *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); the plaintiff's informal estimates or settlement demands, *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006); and where the plaintiff has requested an injunction, affidavits from the defendant's employees or experts about how much it would cost to satisfy the plaintiff's demands, *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1018–19 (7th Cir. 2004)). The Defendant's affidavit differs from these methods of competent proof approved by the Seventh Circuit in at least one important respect: each type of approved proof was linked to the claimant, the claims, the circumstances of the case, and an individualized estimate of the amount in controversy in the case, but the Defendant's affidavit does not have that nexus with the Plaintiff and her individual claims in this case. The Court is left to guess whether, for example, the unpaid disability benefits in those cases were higher, which, along with punitive damages, could push the amount in controversy over the requisite amount. As a consequence, the Court finds that the Defendant's affidavit does not provide competent proof of the amount in controversy in this case.

The Court must consider the good-faith estimates of the parties as well as the bad faith tort alleged and the damages sought by the Plaintiff. *Oshana*, 472 F.3d at 511 (stating that "a good-faith estimate of the stakes is acceptable if it is plausible and supported by the

preponderance of the evidence”). The Indiana Supreme Court has not “decide[d] the precise nature and extent of damages recoverable” for the tort involving breach of the duty of good faith. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993) (*cited in Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 720 (Ind. Ct. App. 2007)). However, it has provided the following instruction regarding damages:

> In tort, all damages directly traceable to the wrong and arising without an intervening agency are recoverable. By contrast, the measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed. Nonetheless, in most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action.

*Id.* (citations omitted). Additionally, damages for emotional distress and mental pain may not be reduced to fixed rules and mathematical precision or calculated with mathematical certainty, and thus such damages are within the province of a jury to determine. *See Combs*, 873 N.E.2d at 721. As to her claim to interest damages, the Plaintiff claims her benefit start date should have been January 17, 2008. Her Complaint was filed on February 26, 2009, and, about one month later, on March 25, 2009, the Defendant removed the case to federal court. Although it is difficult to know based upon the Complaint the amount of interest the Plaintiff seeks, the amount would seem to be more than a negligible amount by the date of removal. Under the circumstances of this case, the Defendant’s estimate that the Plaintiff, for this cluster of damages, will likely seek more than $16,000 is reasonable.

Considering the facts and the claims alleged in the Plaintiff’s Complaint, the Court cannot say that there is a “legal certainty” that the Plaintiff will not collect interest, damages for the Defendant’s alleged bad faith, emotional distress, financial losses, and other losses, in an

amount that does not exceed $15,984. Accordingly, the Court will deny the Plaintiff's Motion for Remand to State Court.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Plaintiff's Motion for Remand to State Court [DE 11].

SO ORDERED on August 24, 2009.

S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT